WILLIAM McKEE

*v.*

HORACE W. COWLES.

*Filed at Ottawa March 28, 1896.*

1. CONTRACTS—*unsigned memorandum binding for one purpose is binding for all.* A court will not hold an unsigned memorandum to be binding for one purpose, at the instance of one party to a litigation, and not binding for another purpose clearly expressed.

2. SAME—*by partners changing their partnership agreement—equitable relief.* Partners voluntarily entering into an agreement whereby their existing partnership agreement is changed, are bound by the natural and logical consequences of their act; and if such new agreement is unambiguous, a court of equity will not grant relief for the reason that it is to the disadvantage of one party.

3. SAME—*when memorandum of negotiations becomes a binding contract.* An incomplete and unsigned memorandum of items agreed to between partners, taken down from their conversation by an attorney, and looking to a dissolution and settlement of the partnership, though ordinarily having the effect of a negotiation only, will be treated as binding as to the items embraced, after it has been acted upon by the parties and relied on by the pleadings of both of them in a subsequent litigation.

*McKee* v. *Cowles*, 59 Ill. App. 28, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill in chancery originally exhibited in the circuit court of Cook county by Horace W. Cowles, who is the appellee here, against William McKee, appellant, for a partnership accounting and settlement. The final decree of the circuit court in the cause was appealed from by McKee, and on June 3, 1895, the Appellate Court for the First District affirmed the decree of the circuit court. McKee now prosecutes this further appeal. The matters submitted on appeal are fixed by the stipulation of the parties, which is set forth in the opinion of the court.

George Burry, for appellant:

If an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void, for neither the court nor the jury can make an agreement for the parties. 1 Chitty on Contracts, (11th Am. ed.) 93 ; *Church* v. *Noble*, 24 Ill. 292.

A party who has submitted a counter-proposition can not, without the assent of the other party, withdraw or abandon the same and then accept the original offer which he once virtually rejected. *Fox* v. *Turner*, 1 Ill. App. 159, and cases cited; *Hussey* v. *Horne-Payne*, 4 id. 311; 3 Am. & Eng. Ency. of Law, 852.

Cowles is estopped from claiming that the negotiation of April 12, 1892, was a completed contract, by the fact that he afterwards, by his letter of June 16, 1892, insisted on treating it as an open negotiation. *Bristol Co.* v. *Maggs*, 44 L. R. Ch. Div. 616.

In this case, the signing of the written contract was intended by the parties to be the consummation of the negotiation. *Morrill* v. *Tehama Co.* 10 Nev. 135; *Congdon* v. *Darcy*, 46 Vt. 486; *Methudy* v. *Ross*, 10 Mo. App. 106; *Ridgeway* v. *Wharton*, 6 H. L. 239; *Miss. Co.* v. *Swift*, 86 Me. 246.

W. B. Wilson, and H. H. Rose, for appellee.

Mr. Justice Phillips delivered the opinion of the court:

Appellant and appellee were partners, engaged in the business of buying, selling, cleaning and storing grain and of buying and selling feed. They engaged in business on May 1, 1888, under written articles of partnership, which were in the following form:

"Whereas, Horace W. Cowles is now carrying on, at room 808 Royal Insurance Building, Chicago, a grain and brokerage business, and William McKee is carrying on, at 279 Twenty-second street, Chicago, the business of buying, selling, cleaning and storing grain and of buying and selling hay and feed, and they wish to carry on their business jointly:

"Now, therefore, this agreement witnesseth, that the said Cowles and McKee have this day formed a partnership, which shall continue until the thirtieth (30th) day after one of the parties hereto shall serve on the other written notice of a desire to terminate the relation. The business shall be carried on under the firm name and style of Cowles & McKee, and shall consist in buying and selling on their own account, and on commission, grain, feed, hay, straw, etc., and in cleaning and storing grain and manufacturing feed. Cowles shall contribute to the firm ten thousand dollars ($10,000) cash and the good will of the business carried on by him as aforesaid. McKee shall contribute to the firm the lease and contract, a copy of each of which is hereto attached; also all the buildings and improvements on the premises described in said lease and contract, (being the premises on which McKee is now carrying on business,) and all the machinery, appliances, scales, trucks, tools, bags, safe, unearned insurance, etc., now on the said premises and used by him in carrying on his said business, (not including, however, the stock of grain, feed, hay, etc., now on hand. An inventory of the said personal property is hereto attached.) Each shall devote his whole time and attention to the business of the firm, and do his utmost to promote its interest, and each shall share equally the profits and losses of the business, but neither shall draw for private use more than fifteen hundred dollars ($1500) in any one year during the continuance of the partnership. The property contributed by McKee shall be kept, as nearly as can be, in as good condition as at present, and if any of it is lost, worn out or destroyed, shall be replaced at the expense of the firm, and in case of the termination of this partnership within......years, shall be taken and received by McKee at the agreed price of ten thousand dollars ($10,000), and if the firm make any improvements on or additions to the said property, then McKee shall, in case of the termination of this partnership aforesaid, take them also and pay therefor their fair cash value, to be ascertained by appraisers selected in the usual manner. If, during the partnership, either of the partners shall discover or acquire any new device useful in the firm business, it shall be regarded and treated as firm assets.

"In witness whereof, the said Horace W. Cowles and William McKee have, this first day of May, A. D. 1888, at Chicago, aforesaid, set their hands and seals.

Hᴏʀᴀᴄᴇ W. Cᴏᴡʟᴇꜱ,  [Seal.]

Wɪʟʟɪᴀᴍ MᴄKᴇᴇ.   [Seal.]" .

The elevator and other improvements contributed by McKee were on leased ground, the leasehold of which expired March 1, 1893. It is conceded that the elevator and other improvements and appurtenances so contributed were worth $10,000,—the sum at which they were put into the partnership. On January 9, 1892, this elevator and other appurtenances were destroyed by fire, and about all that was saved from the property contributed by McKee was some personal property aggregating about $800. An effort was made by the parties to secure the extension of the lease on the site of the burned elevator for the purpose of rebuilding, but that failing, some steps were taken towards securing a new location. About this time, however, a difference arose between the parties as to the construction of that clause in the partnership agreement which provided as follows: "The property contributed by McKee shall be kept, as nearly as can be, in as good condition as at present, and if any of it is lost, worn out or destroyed, shall be replaced at the expense of the firm, and in case of the termination of this partnership within ...... years, shall be taken and received by McKee at the agreed price of ten thousand dollars ($10,000.)" The elevator and premises had been insured, and it was insisted by Cowles that McKee should take these premises in the condition they then were, together with the insurance money, at the agreed price of $10,000. McKee denied this was the proper construction to be placed on the contract. At the suggestion of appellee the parties went to the office of one Rose, solicitor for Cowles, on April 12, 1892, in an effort to arrive at some agreement regarding this particular question. Rose construed the agreement that appellant was bound to take the insurance and the remainder of the plant at $10,000. Appellant testified: "I said that was not my understanding of it. I turned to Mr. Cowles and asked him if that is what he thought was right, and he said he did. 'Well,' I said, 'if that is your wish I will take it, but we will

have to stop the partnership. As far as I am concerned I am willing to waive the thirty days' notice and terminate it at once—terminate it on the day of that last settlement, the 24th day of March. If you are agreed we will make the termination at that time.'" Appellant then asked Rose if he would make a memorandum of an agreement to the above effect, and the following was prepared:

                            *"Dated March ...., 1892.*

"Written notice waived by both parties. Feed store and Dady account to go to McKee at par value. Commission account to go to Cowles at par value. Insurance on plant contributed by McKee and the plant remaining to go to McKee at $10,000. Cowles to have his $10,000. Balance to be divided according to the books."

Appellant took the memorandum to submit to his attorney whether it was proper to waive the thirty days' notice, and the next day proposed to have it put in form. About this time a contract for dissolution was prepared, which was not signed owing to the inability of the parties to agree as to an expert to examine the books. Appellant, however, took possession of the rooms and commenced rebuilding. He also took the insurance money. On May 23, 1892, fearing that the partnership might not have been legally terminated, he gave written notice to Cowles under the clause in the partnership agreement requiring thirty days' notice.

On June 23, 1892, appellee filed his bill in the circuit court of Cook county asking for an accounting and an adjustment of the partnership affairs, and proceeding on the theory that the partnership had terminated on June 22, pursuant to the written notice of appellant. The answer of McKee sets up that the partnership terminated on March 24, by virtue of the agreement of April 12. The memorandum heretofore mentioned as prepared in the office of Rose is relied on and incorporated in the answer. It also avers that in pursuance of that agreement the

elevator plant and other property were turned over to appellant as part of his interest in the late firm, and denies that appellee has any interest in such property. The bill was subsequently amended so as to allege the termination of the partnership on March 24.

The cause was referred to the master to take testimony and report conclusions, and on the filing of his report an interlocutory decree was entered, finding the partnership terminated on March 24, 1892, by agreement of the parties, and as part of said agreement a division of certain of the assets of the co-partnership was made; that what was left of the elevator and plant, together with the insurance collected, was turned over to McKee and accepted by him at the agreed price of $10,000. The cause was then again referred to state an account on this basis and as to other matters of settlement. On December 15, 1894, a final decree was entered finding the equity with complainant, and that there was due from defendant the sum of $3293.84, and ordering payment within ten days. To reverse this decree an appeal was prosecuted to the Appellate Court for the First District.

It was stipulated by the parties that on appeal to the Appellate Court, and afterwards to the Supreme Court, there should be considered only "the meaning and effect of the articles of partnership; whether any settlement of the partnership affairs, in whole or in part, was made by the parties, and if any settlement was made, what it was and its effect."

The Appellate Court, on hearing, affirmed the decree of the circuit court, from which judgment of affirmance this appeal is prosecuted to this court.

By the stipulation of the parties all questions as to general items of the accounting found in the decree of the circuit court are eliminated, and this court is only asked to determine the meaning and effect of the articles of partnership under this appeal, and whether any settlement of the partnership affairs, in whole or in part, was

made by the parties, and if any was made, its effect.  A careful examination of the pleadings in this cause shows certain of these questions are settled.

The principal contention between these late partners is whether McKee shall take the elevator plant as it was after the fire, the personal property remaining and the insurance on the plant, and be charged with the sum of $10,000, as was ordered by the decree of the circuit court.

It is urged by appellant the clause in the articles of partnership which provides, "the property contributed by McKee shall be kept, as nearly as can be, in as good condition as at present, and if any of it is lost, worn out or destroyed, shall be replaced at the expense of the firm, and in case of the termination of this partnership within ...... years, shall be taken and received by McKee at the agreed price of ten thousand dollars ($10,000)," is void for uncertainty, and that it is so vague and indefinite it is not possible to collect the full intention of the parties.  While we do not coincide with the view taken by counsel for appellant on this question, the pleadings in the case and the undisputed facts render a discussion of the legal effect of this clause unnecessary.  The bill, as amended, avers the termination of the partnership on March 24.  The answer not only admits this, but avers it to be the fact, and relies on the agreement of April 12, of which the memorandum was made in the office of Rose. It thus becomes a fact determined by the pleadings that the co-partnership terminated on that date.  The only manner in which it could have terminated was by this agreement to waive thirty days' notice.  Appellant relies on this agreement in his answer and sets up the memorandum in full.  He also therein denies that appellee has any interest in the elevator or plant, but alleges the same was turned over to him as part of his interest in the firm.  All these conditions could have occurred only by virtue of the memorandum of dissolution.  This memorandum provides appellant should take the plant and

insurance money at the agreed sum of $10,000. This court will not attempt to say this agreement was valid for one purpose and not for another which is clearly expressed. If it had the legal effect of terminating the partnership it also had the further effect of binding appellant to take this plant and insurance money at $10,000. Moreover, it appears from the testimony of appellant as to the conversation in the office of Rose, that he agreed to do this, and took possession of the plant on April 12 and proceeded to rebuild it.

When partners voluntarily enter into an agreement, or alter or change one already in existence, they will be bound by the natural and logical consequences of their own acts. When such an agreement is unambiguous, a court of equity will not relieve either party from its effect for the reason that it is to the disadvantage of one.

It is urged by appellant this memorandum of April 12 was not binding, for the reason that there was no acceptance by Cowles of its terms. Following this date a number of efforts were made by the parties to arrive at an agreement settling the partnership. Some other articles of dissolution were drawn but not signed. It appears, however, from one of these, caused to be drafted by appellant and made an exhibit to his answer, it proceeds on the theory that he was to take this plant and insurance money and be charged with $10,000. The difficulty in settling during the period of time from April 12 to June 23 arose from other items of account, and it does not appear to have been questioned by either that McKee was to take the plant on the above terms. During all this time he had possession and was rebuilding. He, from the pleadings, his own testimony and his acts and conduct, shows an acceptance of this memorandum of agreement, and is bound by its terms. In many cases a memorandum of this character, showing different items of an agreement settled and others unadjusted, will be regarded by the court as negotiations, merely, until put

in form and agreed to in an entirety by the parties. But when such memorandum is acted on by the parties, and litigation results, and that memorandum is relied on by both in the pleadings, courts will then cease to treat it as open negotiations, merely, but will hold it to be the formal act of the parties.

It follows from the foregoing discussion and reasoning that we have no hesitancy in saying that the decree of the circuit court was proper in respect to all questions which are raised in this court.

The judgment of the Appellate Court affirming the decree of the circuit court will be affirmed.

*Judgment affirmed.*